**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

GEORGE KELLY,                                       )
                                                   )
            Plaintiff,                             )
                                                   )
v.                                                 )        Case No. 20-CV-00334-GKF-JFJ
                                                   )
WARREN LINN,                                        )
                                                   )
            Defendant.                             )

**OPINION AND ORDER**

Before the court is the Motion to Intervene as Plaintiff [Doc. 55] of Neuropathy Treatment Clinic of Oklahoma, LLC (NTCO).  For the reasons set forth below, the motion must be denied.

However, it appears that NTCO is a necessary party to this action, but cannot feasibly be joined pursuant to Federal Rule of Civil Procedure 19.  Plaintiff George Kelly shall file a supplemental brief directed to the propriety of dismissal of this action without prejudice pursuant to Rule 19 and Rule 12(b)(7) on or before September 29, 2021.

### I.        Background and Procedural History

This case arises from a business dispute.  On September 15, 2016, plaintiff George Kelly, defendant Warren Linn, and a third-party formed NTCO.  [Doc. 14-1; Doc. 14-2, p. 1].  The members executed the Operating Agreement of Neuropathy Treatment Clinic of Oklahoma, LLC, dated October 29, 2016 (Operating Agreement), pursuant to which Linn and the third-party were designated as managers.

On May 5, 2017, the third-party conveyed his ownership interest to Kelly.  Thereafter, it appears that defendant Linn acted as NTCO's sole manager.  Additionally, at all times, Linn was NTCO's majority owner.

On July 13, 2020, Kelly initiated this litigation against Linn.  In the Complaint, the operative pleading in this matter, Kelly alleges that Linn breached his fiduciary duties owed to Kelly in the following ways:  (1) failing to pay his capital contribution to NTCO; (2) failing to ensure that all capital contributions were made, as required by the Operating Agreement; (3) failing to provide notice to the non-defaulting member that a member had defaulted on payment of his capital contributions; (4) breaching his fiduciary duties because his did not want his own membership interest to be reduced; (5) failing to abide by the requirements of the Operating Agreement and Oklahoma statutes with respect to distributions of profits to the members, in that he has continually made distributions to himself and refused to make distributions to Kelly; (6) failing to make distributions in proportion to each members' interest in NTCO; (7) undertaking action, making expenditures, and binding NTCO without approval of all members in violation of the Operating Agreement; (8) never calling or holding a meeting of NTCO pursuant to the Operating Agreement and actively concealing NTCO business activities from Kelly; (9) taking action to compromise and/or transfer the trade secrets, trade name, and intellectual property of NTCO to the benefit of himself and neuropathy treatment clinics located in Oklahoma City, Oklahoma and Bartlesville, Oklahoma in which he owns an economic interest without Kelly's approval; (10) directing and transferring money and assets of NTCO to his neuropathy treatment clinics located in Oklahoma City and Bartlesville to the detriment of NTCO and Kelly and without Kelly's approval; (11) transferring from NTCO's bank account to an account at "Grand Bank" at least $400,000.00, which is an account Linn never disclosed to Kelly and which

remains completely unknown to Kelly; (12) failing to keep or cause to be kept complete and accurate books and records of NTCO; (13) making numerous cash withdrawals from NTCO accounts, via ATM withdrawals and over the counter withdrawals, and refusing to account for the use of the cash; (14) taking specific and intentional action to keep NTCO banking and accounting information hidden from Kelly by contacting NTCO's banking institution and blocking access to the same by Kelly; (15) failing to maintain NTCO books and records with sound accounting practices and refusing to make NTCO's books and records available to Kelly at NTCO's place of business; (16) failing to provide annual reports; (16) using NTCO funds to make purchases and pay expenses of his neuropathy treatment clinics in Oklahoma City and Bartlesville without Kelly's approval; and (17) usurping the corporate/company opportunities of NTCO by giving himself an ownership interest in the real estate where he directed NTCO's new offices to established to the exclusion of Kelly.

On June 2, 2021, NTCO filed the motion to intervene based on the assertion that Kelly's claims are, in fact, derivative claims.  [Doc. 55].  Kelly responded in opposition [Doc. 60], and NTCO filed a reply [Doc. 61].

## II.      Nature of Plaintiff's Claims

Prior to considering the propriety of intervention, it is helpful to consider the nature of Kelly's claims in this matter.

Pursuant to Oklahoma law, a member of a limited liability company may bring a statutory cause of action "in the right of the limited liability company to recover a judgment in its favor" under certain circumstances.  Okla. Stat. tit. 18, § 2051.[1]  "It seems to be the universal rule that the remedial rights of minority stockholders with respect to *wrongs committed against*

---

[1] "A federal court sitting in diversity applies the substantive law of the forum state."  *Mincin v. Vail Holdings, Inc.*, 308 F.3d 1105, 1108 (10th Cir. 2002).

*the corporation* by the directors in the management of corporate affairs are derivative rights and any action taken by the stockholders to redress such wrongs must be for the benefit of the corporation." *Dobry v. Yukon Elec. Co*., 290 P.2d 135, 137 (Okla. 1955) (emphasis added). However, Oklahoma law also recognizes that "a majority shareholder has a fiduciary duty not to misuse his power by promoting his personal interests at the expense of the corporation, and the majority shareholder has the duty to protect the interests of the minority." *Renberg v. Zarrow*, 667 P.2d 465, 472 (Okla. 1983). Thus, the court must determine whether Kelly's claims are derivative or direct.

Although unpublished and therefore not precedential, the decision of the Oklahoma Court of Civil Appeals in *Watkins v. Hamm* is persuasive in this regard. 419 P.3d 353 (Okla. Civ. App. 2017).[2] There, minority shareholders in Continental Resources, Inc. purported to bring a direct action against corporate officers and directors for breach of fiduciary duty based on allegations of unlawful dilution of the shares as a result of an asset purchase. *Id.* at 355-56. Plaintiffs in that case sought damages including the excessive amount allegedly paid for the assets, as well as rescission of the Continental stock issued in excess of the value of the assets, all of which would "flow to Continental." *Id.* at 357. Defendants moved to dismiss, arguing that Oklahoma law did not recognize a direct action by stockholders against corporate officers or directors.

The Oklahoma Court of Civil Appeals ultimately declined to adopt a direct cause of action in shareholder litigation. *Id.* at 362. And in considering the nature of plaintiffs' claims in that matter, the court applied a test first articulated by the Delaware Supreme Court in *Tooley v.*

---

[2] Decisions of the Oklahoma Court of Civil Appeals released for publication by that court are not binding authority, but "shall be considered to have persuasive effect." Okla. Sup. Ct. R. 1.200(d)(2).

*Donaldson, Lufkin & Jenrette, Inc*., 845 A.2d 1031, 1036 (Del. 2004).[3]  Pursuant to the *Tooley*

test, the determination of whether a stockholder's claim is derivative or direct "must turn solely

on the following questions:  (1) who suffered the alleged harm (the corporation or the suing

stockholders, individually); and (2) who would receive the benefit of any recovery or other

remedy (the corporation or the stockholders, individually)?"  *Watkins*, 419 P.3d at 358 (quoting

*Tooley*, 845 A.2d at 1033).  For a claim to be direct, the *Tooley* test also "requires proof that the

plaintiffs 'can prevail without showing an injury to the corporation.'"  *Watkins,* 419 P.3d at 361

(quoting *Tooley*, 845 A.2d at 1036).

Here, Kelly's allegations of breach of fiduciary duty include claims that Linn improperly

transferred NTOC's trade secrets, trade names, intellectual property, money, and assets to Linn's

Oklahoma City and Bartlesville neuropathy treatment clinics—in essence, misappropriation of

company assets.  Misappropriation claims are properly characterized as derivative.  *See Dobry,*

290 P.2d at 137; *James v. Patton*, No. 06-CV-52-JHP, 2007 WL 2703117, at *5 (E.D. Okla.

Sept. 14, 2007) (internal citation omitted) ("Because any misappropriation of corporate funds by

[majority shareholders] could result only in 'consequential injury to [minority shareholder],

either by depriving him of dividends which he might otherwise have received or by depressing

the value of his stock,' any claims premised thereon *must be* brought as part of a derivative

action."); 3A Vernon's Okla. Forms 2d, *Business Organizations* § 7.53 (Nov. 2020 update)

(internal footnote omitted) ("[A] member might bring a suit against various parties alleging that

they fraudulently transferred to themselves assets belonging to the LLC.  In such a case, the real

---

[3] The court recognized that "Oklahoma's corporate law is derived from the corporate law of Delaware."  *Watkins,* 419 P.3d at 356.  "It is a settled rule that when one state adopts a statute from another, it is presumed to adopt the construction placed upon the statute by the highest court of the other state."  *Id.* (quoting *Bank of the Lakes v. First State Bank*, 708 P.2d 1089 (Okla. 1985)).

party in interest is the LLC and not the individual member of the LLC.").  Likewise, NTCO, not Kelly, has suffered the alleged harm in Linn's asserted failure to pay capital contributions and NTCO, rather than Kelly, would receive the recovery.  And allegations that Linn usurped NTCO's corporate opportunities to his own benefit cannot be shown absent injury to NTCO.  *See Watkins,* 419 P.3d at 361 (quoting *Tooley*, 845 A.2d at 1036).  Accordingly, these claims are properly characterized, and can only be brought, as derivative claims.

### III.    Intervention Analysis

NTCO seeks intervention as a matter of right pursuant to Fed. R. Civ. P. 24(a) and permissive intervention pursuant to Fed. R. Civ. P. 24(b).

Pursuant to Federal Rule of Civil Procedure 24(a), "a nonparty seeking to intervene as of right must establish (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties." *Kane Cnty. v. United States*, 928 F.3d 877, 889 (10th Cir. 2019) (citing *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017)).  The Tenth Circuit "has historically taken a liberal approach to intervention and thus favors the granting of motions to intervene." *Id.* at 890.  "The central concern in deciding whether intervention is proper is the practical effect of the litigation on the applicant for intervention." *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019) (quoting *San Juan Cnty. v. United States*, 503 F.3d 1163, 1193 (10th Cir. 2007)).

Federal Rule of Civil Procedure 24(b) provides that, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2).  This standard is "permissive" and "a matter within the district court's discretion." *City of Stillwell v. Ozarks Rural Elec. Coop. Corp.,*

79 F.3d 1038, 1043 (10th Cir. 1996) (quoting *Kiamichi R.R. Co., Inc. v. Nat'l Mediation Bd.,* 986 F.2d 1341, 1345 (10th Cir. 1993)). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

However, "[a]s part of a federal case, an application to intervene must have an independent basis of subject matter jurisdiction." 6 James Wm. Moore et al., *Moore's Federal Practice*, § 24.22[1] (3d ed. 2020); *see also Griffin v. Lee*, 621 F.3d 380 (5th Cir. 2010).

NTCO's proposed Complaint in Intervention does not assert a federal question, 28 U.S.C. § 1331. *See generally* [Doc. 55-1].

Nor does the Complaint in Intervention invoke the court's diversity jurisdiction, 28 U.S.C. § 1332. Complete diversity does not exist between the parties. NTCO is a limited liability company and therefore assumes the citizenship of its members. *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1238 (10th Cir. 2015). NTCO's members are Kelly, a Texas citizen, and Jet Training, LLC, a citizen of Oklahoma.[4] *See* [Doc. 61-1, at p. 1; Doc. 21-2; Doc. 21-4]. Thus, for purposes of the court's diversity jurisdiction, intervenor-plaintiff NTCO is a citizen of both Texas and Oklahoma. Defendant Linn is an Oklahoma citizen. [Doc. 61-1, at p. 2]. Complete diversity therefore does not exist because intervenor-plaintiff and defendant are both Oklahoma citizens.

Finally, the court cannot exercise supplemental jurisdiction over NTCO's proposed claims in intervention. Title 28, section 1367, the federal supplemental jurisdiction statute, provides:

---

[4] Jet Training, LLC's sole member is Linn, who is an Oklahoma citizen. [Doc. 61-1].

> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b).  "Section 1367(b) thus makes it clear that when a person seeks to intervene as a plaintiff into a diversity based case, supplemental jurisdiction over the intervenor's claim does not exist where such jurisdiction would be inconsistent with § 1332's requirements." *DKNP, LLC v. GMRI, Inc*., No. 06-CV-686-JHP, 2007 WL 3046459, at *3 (N.D. Okla. Oct. 17, 2007); *see also* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1917 (3d ed. Apr. 2021 update).  NTCO seeks to intervene as a plaintiff under Rule 24.[5]  Thus, section 1367 prohibits the court from exercising supplemental jurisdiction over NTCO's claim as, for the reasons discussed above, to do so would be inconsistent with § 1332's requirements.  NTCO's motion to intervene pursuant to Rule 24 must therefore be denied.

## IV.    Rule 19 Analysis

Federal Rule of Civil Procedure 12(b)(7) provides for dismissal of an action for "failure to join a party under Rule 19."  The Tenth Circuit has recognized that "Rule 19 provides a three-step process for determining whether an action should be dismissed for failure to join a purportedly indispensable party." *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th

---

[5] The court recognizes its duty to "look beyond the pleadings, and arrange the parties according to their sides in the dispute." *City of Indianapolis v. Chase Nat'l Bank,* 314 U.S. 63, 69 (1941).  Having done so, the court concludes that an actual and substantial conflict exists between NTCO and Linn as to the derivative claims.  *See Price v. Wolford*, 608 F.3d 698, 705 (10th Cir. 2010) ("Under the substantial-conflict test, a party need not be realigned so long as it has an 'actual and substantial conflict' with a party on the other side.").  Further, it is in the best interests of both Kelly and NTCO to prohibit NTCO from transferring NTCO funds and assets to its detriment. Therefore, NTCO would be properly aligned as a plaintiff, if allowed to intervene.

Cir. 2001).  Failure to join a party "can be made at any time and a court can raise the matter *sua sponte*."  *State Farm Mut. Auto. Ins. Co. v. Mid-Continent Cas. Co.*, 518 F.2d 292, 294 (10th Cir. 1975).

*First*, "the court must find that a prospective party is 'required to be joined' under Rule 19(a)."  *N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1278 (10th Cir. 2012).  Rule 19(a) states:

(a)     Persons Required to Be Joined if Feasible

       (1)     Required Party.  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

             (A)     in that person's absence, the court cannot accord complete relief among existing parties; or

             (B)     that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

                 (i)     as a practical matter impair or impede the person's ability to protect the interest; or

                 (ii)     leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

*Second*, if the absent person or entity was required to be joined, "the court must then determine whether joinder is 'feasible.'"  *Norton*, 248 F.3d at 997.  "If joinder is feasible, the court must order it; the court has no discretion at this point because of the mandatory language of the rule."  7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1611 (3d ed. Apr. 2021 update) (internal footnote omitted).

*Third and finally*, if the required person or entity cannot be feasibly joined, "the court must determine, under Rule 19(b), whether the required-but-not-feasibly-joined party is so important to the action that the action cannot 'in equity and good conscience' proceed in that person's absence." *Harnsberger,* 697 F.3d at 1278-79.  The factors for the court to consider include:

> (1)  the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2)  the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;
>
> (3)  whether a judgment rendered in the person's absence would be adequate; and
>
> (4)  whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  If the action cannot "in equity and good conscience" proceed without the absent person or entity, the action "should be dismissed." *Id.*  "Because Rule 19(b) does not state the weight to be given each factor, the district court in its discretion must determine the importance of each in the context of the particular case." *Thunder Basin Coal Co. v. Sw. Pub. Serv. Co.*, 104 F.3d 1205, 1211 (10th Cir. 1997).

The court first considers whether NTCO is "'required to be joined' under Rule 19(a)." *See N. Arapaho Tribe*, 697 F.3d at 1278.  Under Oklahoma law, NTCO is the real party in interest. *See Weston v. Acme Tool, Inc.*, 441 P.2d 959, 962 (Okla. 1968) ("The remedial rights of minority stockholders with respect to wrongs committed against the corporation by the officers and directors in the management of corporate affairs are derivative rights and any action taken by

the stockholders to redress such wrongs must be for the benefit of the corporation."); 3A Vernon's Okla. Forms 2d, *Business Organizations* § 7.53 (Nov. 2020 update). Thus, because the derivative claims in this matter actually belong to NTCO, the court cannot afford complete relief without NTCO.[6] NTCO also clearly has an interest in the litigation and disposing of the action in its absence would impede its ability to protect that interest. *See* Fed. R. Civ. P. 19(a)(1)(A), (a)(1)(B)(i). Further, other federal courts have concluded that the entity is an indispensable party to a suit asserting derivative claims. *See Koster v. (Am.) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 522-23 (1947) (corporate context); *Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 382 (7th Cir. 1990); *TC Invs., Corp. v. Becker*, 733 F. Supp. 2d 266, 287 (D.P.R. 2010) ("A derivative action must proceed with a corporation, because by definition, the action itself derives its existence from the rights of the corporation, not those of the shareholder plaintiff."). Thus, "Rule 19 is *not* 'applied pragmatically' in derivative cases." *Bagdon*, 916 F.2d at 382 (emphasis in original).

Because the court can neither afford complete relief nor protect the absent parties' interest, NTCO is required to be joined under Rule 19(a). The court must next determine whether joinder is feasible. *See Norton*, 248 F.3d at 997.

The feasibility analysis requires the court to consider whether "the absentee is subject to service of process and whether joinder will deprive the court of jurisdiction over the subject matter of the action." 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1604 (3d ed. Apr. 2021 update) (internal footnote omitted).

As discussed above, joinder of NTCO as a plaintiff in this litigation destroys complete diversity. Thus, NTCO's joinder is not feasible and the court must consider whether, in equity

---

[6] Moreover, Federal Rule of Civil Procedure 17 requires that an action be "prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a).

and good conscience, the action should proceed among only the existing parties or be dismissed. It therefore appears that the action should be dismissed. However, Kelly must be provided the opportunity to respond. *See* 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1609 (3d ed. Apr. 2021 update) ("If the trial court raises a possible Rule 19 defect *sua sponte*, however, it must give plaintiff the opportunity to respond before dismissing the complaint."). Accordingly, within fourteen (14) days of the date of this Order, or September 29, 2021, plaintiff George Kelly shall submit to the court additional briefing directed to whether, in equity and good conscience, the action should proceed among only the existing parties or be dismissed.

## V.     Conclusion

WHEREFORE, the Motion to Intervene as Plaintiff [Doc. 55] of Neuropathy Treatment Clinic of Oklahoma, LLC is denied.

However, based on the briefing, it appears that NTCO is a necessary party to this action, but cannot feasibly be joined pursuant to Federal Rule of Civil Procedure 19. Plaintiff George Kelly shall file a response to this Order directed to whether, in equity and good conscience, the action should proceed among only the existing parties or be dismissed, on or before September 29, 2021.

DATED this 15th day of September, 2021.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE